UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SAWAN K.,

        Petitioner,

      v.

KRISTI NOEM, et al.,

        Respondents.

No. 1:26-cv-00228-TLN-SCR

[A# 221-149-941]

**ORDER**

This matter is before the Court on Petitioner Sawan K.'s ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) Respondents filed an answer.[1] (ECF No. 8.) Petitioner did not reply. For the reasons set forth below, Petitioner's Motion is GRANTED.

**I.    FACTUAL BACKGROUND**

Petitioner is a citizen of India and an asylum applicant in the United States. (ECF No. 1 at 3.) On September 15, 2024, Petitioner entered the United States without inspection and was apprehended by U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 1-3 at 2.) Petitioner claimed a fear to return to India due to political persecution and he was later released

---

[1] In their return to the Petition, Respondents requested the Court rule on the Petition and enter final judgment if it was inclined to grant a preliminary injunction. (ECF No. 8 at 1 n.1.) The Court now obliges.

by ICE to pursue his asylum application.  (ECF No. 1 at 6.)  Petitioner filed an asylum application, which is still pending.  (*Id.*)  During his year of release, Petitioner appeared at his ICE appointments.  (*Id.*)

Nevertheless, on September 15, 2025, at a routine ICE check-in, ICE detained Petitioner without a warrant or a hearing.  (*Id.*)  At the time of arrest, there were no removal proceedings pending against Petitioner.  On October 1, 2025, an immigration judge found that Petitioner had established a reasonable probability of persecution or torture in his home country.   (ECF No. 8 at 14.)  On October 20, 2025, over a month after his arrest, the government issued Petitioner a Notice to Appear, initiating removal proceedings against him.  (*Id.* at 6.)  On November 5, 2025, an immigration judge refused Petitioner a custody hearing for lack of jurisdiction to grant bond. (ECF No. 8 at 16 (citing *Matter of Yajure Hurtado*, 291 I. & N. Dec. 216, 225 (BIA 2025)[2]).)

Petitioner was detained for approximately four months in civil immigration detention. During that time, he was never provided a bond hearing.  (*Id.*)  Petitioner challenged the lawfulness of his detention through the Petition and a Motion for Temporary Restraining Order. (*See* ECF Nos. 1, 2.)  On January 13, 2026, the Court found Petitioner was likely to succeed on his claims that his detention violated the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause and ordered Petitioner's release.  (ECF No. 4.)  The Court now considers the Petition on the merits.

**II.    STANDARD OF LAW**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

_____

[2]    In September 2025, the Board of Immigration Appeals, within the U.S. Department of Justice, issued a decision that immigration judges have no authority to consider bond requests for any person who entered the United States without admission because, under U.S. Department of Homeland Security's new policy, they are subject to mandatory detention under 8 U.S.C. § 1225. *Matter of Yajure Hurtado*, 291 I. & N. Dec. 216, 225 (BIA 2025). The *Maldonado Bautista* court vacated *Matter of Yajure Hurtado* as contrary to law under the Administrative Procedure Act. *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026), *vacatur stayed outside C.D. Cal*., *Maldonado Bautista v. U.S. Dep't Homeland Security*, No. 26-1044 (9th Cir. Mar. 6, 2026).

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violated the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 13.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.[4]  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

---

[3]    Petitioner also claims that his detention violates the Immigration and Nationality Act. (ECF No. 1 at 13.)  Finding relief warranted under Petitioner's due process claim, the Court declines to address the statutory claim.

[4]    Respondents contend any argument they violated substantive due process should fail. (ECF No. 8 at 6–7.)  Petitioner does not appear to claim a substantive due process violation nor does he brief any argument on the issue.  Thus, the Court declines to address substantive due process, having found relief warranted under procedural due process.  Respondents also argue that continued detention after vacatur of a negative credible fear determination is lawful. (*Id.* at 9–10.)  The Court cannot find any argument or claim in the Petition relating to this claim and disregards the argument as a copying err.

3

the question remains what process is due.").

*i.  Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody in September 2024.  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release.  During his release, Petitioner complied with the conditions of his release.  Indeed, his arrest was a result of his compliance with ICE check-ins.  (*See* ECF No. 1 at 3.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

///

4

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.[5]

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  The nearly three years Petitioner spent at liberty underscores the gravity of its loss.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Despite his interest in maintaining his liberty, Petitioner has now been detained for over a month without any opportunity to be heard as to the justification of his detention.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

---

[5]    Respondents argue that the *Mathews* balancing framework should not be used in an immigration context because noncitizens have only rights provided by statute. (ECF No. 8 at 7.) The Ninth Circuit has repeatedly applied the *Mathews* test when assessing immigration due process challenges.  *See Rodriguez Diaz*, 53 F.4th at 1206.  The Ninth Circuit instructs the *Mathews* test is flexible and can account for the heightened governmental interest in the immigration detention context.  *Id.*  Moreover, noncitizens "who have once passed through our gates, even illegally, are afforded the full panoply of procedural due process protections, and may be expelled only after proceedings conforming to traditional standards of fairness." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693 ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to [noncitizens] outside of our geographic borders. . . . But once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner's asylum application is ongoing and there is no removal order. (*See* ECF No. 1 at 3.) Additionally, before releasing him in 2024, immigration authorities would have found that Petitioner was not a danger to the community nor a flight risk. As stated above, Petitioner's complied with his ICE check-in, which led to his detention, (ECF No. 1 at 3), thus, he was not a flight risk at the time of his detention. Therefore, on this record, the Court cannot find any legitimate interest for Respondents to detain Petitioner. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the

Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."

Respondents did not provide a pre-deprivation hearing. Nor did Respondents provide a post-deprivation hearing during Petitioner's detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

April 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE